8 P.3d 652

STATE of Idaho, Plaintiff–Respondent,

v.

Nelly I. HUMPHERYS, Defendant–
Appellant.

No. 25408.

Supreme Court of Idaho,
Boise, February 2000 Term.

July 20, 2000.

Rehearing Denied Sept. 8, 2000.

Ronaldo A. Coulter, State Appellate Public Defender, Boise, for appellant. Sara B. Thomas argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

KIDWELL, Justice.

This appeal arises from a judgment of conviction for first degree arson. Appellant claims that since the verdict was supported largely by circumstantial evidence, the district court erred in refusing to give a special jury instruction pertaining to the use and limitation of circumstantial evidence. We disagree.

## I.

### FACTS AND PROCEDURAL HISTORY

Early on the morning of April 24, 1998, the Mountain Home Fire Department responded to a fire call at a trailer house occupied by Nelly I. Humpherys and her daughter. The trailer house was owned by Humpherys' estranged husband, who allowed Humpherys to live there even though the two were in the process of obtaining a divorce. This was Humpherys only place to live as evidenced by the fact that after the fire she lived in a women's shelter until her estranged husband rented an apartment for her.

Several members of the Mountain Home Fire Department arrived to control the fire. After the fire had been extinguished, two of the firemen questioned Humpherys about the origin of the fire. This process was frustrated because Humpherys speaks very poor English. (Because of her limited ability to communicate in English, Humpherys testified in Spanish, through a translator, at the trial.) Humpherys told the firemen that the fire started on a desk in the living room. At trial, the fire chief testified that Humpherys told him that she had been at home reading her divorce papers by candlelight that evening since the power was out, and that after she went to bed the fire started.

Other firemen testified that Humpherys gave different accounts of how she escaped from the fire. However, the firemen also testified that because of a language barrier and Humpherys' emotional condition, it was possible that they may have misunderstood her stories — they claimed to have only understood about sixty percent of what she said.

The fire chief and several other firefighters investigated the cause of the fire. They testified that they believed the fire had started in two places: one, on the desk in the living room, and the other near the front door. When the fire chief became suspicious of the origin of the fire, he interviewed Humpherys again. This time she "started crying, blaming her ex-husband for starting the fire, ranting and raving, going on, and she was at that time kind of difficult to understand."

The fire chief also testified that he believed an accelerant was used to start the second fire by the front door, although, the laboratory tests for accelerants came back negative. Unable to determine the cause of the fire,

the fire chief called the State Fire Marshal. The Fire Marshal conducted an investigation and concluded that the fire had started in two places. The Fire Marshal testified that he believed an accelerant was used, and that he could not find any evidence of an accidental cause for the fire.

On June 9, 1998, Humpherys was charged with first degree arson. A jury trial was held in January of 1999. At the conclusion of both sides' cases, jury instructions were discussed by the court and counsel. Counsel for Humpherys proposed a *Holder*[1] jury instruction dealing with the use of circumstantial evidence. Counsel for the State argued that the *Holder* instruction was not appropriate because even though the State had no direct evidence of Humpherys' guilt, it did have direct evidence that the fire had been arson. Ruling from the bench, the court determined that since there was a mixture of direct and circumstantial evidence, a *Holder* instruction would not be given. The jury returned a verdict of guilty on the sole charge of arson. Humpherys appealed.

## II.

### STANDARD OF REVIEW

Whether jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free review. *State v. Bush,* 131 Idaho 22, 32, 951 P.2d 1249, 1259 (1997). When this Court reviews jury instructions, it must first determine whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *State v. Row,* 131 Idaho 303, 310, 955 P.2d 1082, 1089 (1998). An instruction is not reversible error unless it misled the jury or prejudiced the complaining party. *Id.* A defendant's requested instruction is not required when it is a misstatement of the law, adequately covered by other jury instructions, or is not supported by the facts. *State v. Eastman,* 122 Idaho 87, 89, 831 P.2d 555, 557 (1992).

## III.

### ANALYSIS

Humpherys contends that the *Holder* instruction should have been given because the prosecution did not present any direct evidence linking Humpherys to the crime, nor any direct evidence of Humpherys' guilt. The State responds that *Holder* should be overturned, or in the alternative, that since the State presented a mixture of direct and circumstantial evidence at trial a *Holder* instruction was not proper.

In *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979), this Court held that when the prosecution's evidence is entirely circumstantial, the defendant is entitled to a special instruction limiting the effects of the evidence. *Id.* at 132–33, 594 P.2d at 642–43. In that case, Holder was convicted of the burglary of a sporting goods store, where guns were taken, upon the testimony of five witnesses. One witness testified that Holder had been driving a green Buick with out-of-state plates which were dark orange with orange letters. *Id.* at 129, 594 P.2d at 639. Holder's companion was seen driving a dark GMC or Chevrolet pickup with plates similar to Holder's. *Id.*

Another witness testified that Holder and his companions had been in the store and had talked with the witness about the guns, which were taken during the burglary. *Id.* at 130, 594 P.2d at 640. Another witness testified that after hearing the sound of glass breaking, the witness looked out the window and saw two vehicles in front of the store. *Id.* The vehicles were a Buick or Oldsmobile and a dark Chevrolet pickup with out-of-state plates that were yellow with dark letters and numerals. *Id.* The same witness also testified to seeing unidentified individuals in front of the store loading what "looked like guns" into the pickup. *Id.*

A hotel clerk at the hotel where Holder was registered testified that Holder and a companion drove a dark vehicle into the hotel's parking garage in the early morning hours of the day of the burglary. *Id.* Finally, a police officer testified that the sporting

---

1.  *State v. Holder,* 100 Idaho 129, 132–33, 594     P.2d 639, 642–43 (1979).

goods store had been burglarized and guns had been taken. *Id.*

At the conclusion of the parties' cases, Holder proposed the following jury instruction regarding circumstantial evidence:

> You are not permitted to find the defendant guilty of the crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.
>
> Also, if the evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt.

*Id.* at 132, 594 P.2d at 642. The district court refused the instruction and Holder appealed. On appeal, this Court held, that considering the entire evidence against Holder was circumstantial, the district court erred in refusing to allow the requested instruction. *Id.* at 133, 594 P.2d at 643.

The Court's holding in *Holder* led to the rule that "in cases where guilt is proven by circumstantial evidence, that evidence must be sufficient to exclude every reasonable hypothesis other than the guilt of the defendant." *State v. Randles,* 117 Idaho 344, 350, 787 P.2d 1152, 1158 (1990).

The basis for the Court's holding in *Holder* was the concern that circumstantial evidence was inherently unreliable and could be the basis for convicting an innocent defendant. Early cases from this Court noted the Court's apprehension of convictions based entirely upon circumstantial evidence. *See, e.g., State v. Hix,* 58 Idaho 730, 743, 78 P.2d 1003, 1009 (1938). In *Hix,* the Court held that, although circumstantial evidence "can be so certain and definite as to leave no room for reasonable doubt," in some cases "circumstances can be very strong against an innocent person but at the same time not exclude a reasonable theory of innocence. *In such*

*cases circumstantial evidence is very dangerous as it arouses violent suspicions which are difficult to explain or rebut even by an innocent person." Id.* (emphasis added).

This rationale has continued to permeate jury instructions in circumstantial evidence cases through the years. Recently this Court noted:

> We reaffirm that juries must receive the *Holder* instruction in circumstantial evidence cases, due to the problematic nature of such evidence and the principle that criminal guilt must be proved beyond a reasonable doubt. The role of the jury and the trial court is to determine the facts of a case. To that end there are necessary safeguards to guide the jury in evaluating the evidence before it. That is the function of the *Holder* instruction.

*Randles,* 117 Idaho at 350, 787 P.2d at 1158.

However, even in light of our previous adherence to the *Holder* instruction, the State urges this Court to re-examine the necessity and value of the instruction. We accept the State's invitation to review and reconsider the *Holder* instruction.

■ We recognize that this Court should not consider overruling controlling precedent if the Court can dispose of the appeal on other grounds. *Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 77, 803 P.2d 978, 983 (1990). "[T]he rule of stare decisis dictates that we follow [controlling precedent] unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Id.*

> This court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.
>
> Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will

not result in justice, it is evident that the doctrine is not properly applicable.

*Smith v. State*, 93 Idaho 795, 801, 473 P.2d 937, 943 (1970).

■ "While we are cognizant of the importance *stare decisis* plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case, has proven over time to be unjust or unwise." *Salinas v. Vierstra*, 107 Idaho 984, 990, 695 P.2d 369, 375 (1985).

Therefore, we must examine the *Holder* instruction to determine whether the instruction is still necessary in circumstantial evidence cases. In making this determination, after we have reviewed our own line of jurisprudence, it is important to consider cases from other jurisdictions.

In 1954, the U.S. Supreme Court faced the issue of whether a trial judge erred in failing to instruct the jury "that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt." *Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150, 166 (1954). The Court noted that there was support for this type of instruction in the circuit courts, but ruled that "the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Id.* The Court explained:

> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Id.* at 139–40, 75 S.Ct. 127.

Many of the rulings from our sister states have followed the U.S. Supreme Court's holding in *Holland*, that an additional jury instruction is not required in a circumstantial evidence case, when the jury is properly instructed on the reasonable doubt burden of proof. *See, e.g., State v. Harvill*, 106 Ariz. 386, 476 P.2d 841 (1970); *Murray v. State*, 249 Ark. 887, 462 S.W.2d 438 (1971); *Henry v. State*, 298 A.2d 327 (Del.1972); *State v. Bush*, 58 Haw. 340, 569 P.2d 349 (1977); *State v. Wilkins*, 215 Kan. 145, 523 P.2d 728 (1974); *Hebron v. State*, 331 Md. 219, 627 A.2d 1029 (1993); *Vincze v. State*, 86 Nev. 546, 472 P.2d 936 (1970); *State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1983); *State v. Roddy*, 401 A.2d 23 (R.I.1979); *State v. Gosby*, 85 Wash.2d 758, 539 P.2d 680 (1975); *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995); *Blakely v. State*, 542 P.2d 857 (Wyo. 1975).

As explained by the Supreme Court of West Virginia:

> Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence. Hence, we can discern no reason to continue the requirement that circumstantial evidence must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt. We agree with those courts that have held that an additional instruction on the sufficiency of circumstantial evidence invites confusion and is unwarranted. Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a factfinder.

*State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163, 175 (1995) (quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, 502 (1991)(overruled on other grounds)).

■ We agree with the conclusion of the courts from the growing majority of states that in all criminal cases there should be only one standard of proof, which is beyond a reasonable doubt. Therefore, we hold

that once the jury has been properly instructed on the reasonable doubt standard of proof, the defendant is not entitled to an additional instruction on circumstantial evidence even when all the evidence is circumstantial. Accordingly, we overturn *Holder* and its progeny, which held that an additional jury instruction was required in cases based entirely on circumstantial evidence.

## IV.

## CONCLUSION

We hold that the district court did not err in denying Humpherys' requested *Holder* instruction in this case. In overturning *Holder*, we hold that there is one standard of proof in criminal cases which is beyond a reasonable doubt. Therefore, we affirm the judgment convicting Humpherys of first degree arson.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.