## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 50121

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: March 13, 2024 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ADAM WAYNE SMITH, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for two counts of enticing children through the use of the internet, <u>affirmed</u>.

Greg S. Silvey, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge Pro Tem

Adam Wayne Smith appeals from his judgment of conviction for two counts of enticing children through the use of the internet. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Smith was charged with enticing a child through use of the internet or other communication devices in violation of I.C. § 18-1509A. Smith initiated conversations with two different online personas (Chloe and Hannah) that were actually a federal agent posing as girls aged thirteen.[1]

---

[1] There was an additional online persona (Sadie). The agent discontinued Sadie's communications with Smith when no illegal activity occurred. Sadie was represented to be twelve years of age.

Smith had virtual conversations with the girls over several months that became sexual in nature. He asked the girls if they liked older men; asked about their sexual history; told them that he was aroused; and referred to them as "babe," "baby," "beautiful," and "sexy." Smith requested both girls send him pictures and videos and asked that they engage in role-play conversations detailing explicit sexual scenarios between Smith and the girls. Smith also told both girls that he was planning to travel to meet them.

The agent, acting as the online personas, told Smith that the girls were underage.[2] With Chloe, Smith said, "And you're 19?" to which Chloe responded, "No I'm 13 like I told you." Smith engaged in sexual role-play conversations with Chloe and told her several times that he was planning a trip to visit her to build a relationship with her. After engaging in one sexual role-play scenario, Smith requested a picture of Chloe and said he wanted to do that scenario in real life. The following is a transcript of the relevant text exchange.

| [Smith]: | Are you wet down[ ]there? |
|---|---|
| Chloe: | Yeah |
| [Smith]: | Prove it haha |
| Chloe: | How? |
| [Smith]: | Pic? |
| Chloe: | Of what? |
| [Smith]: | Whatever you want to send |
| [Smith]: | I'm more of a boob guy. |
| . . . . | |
| Chloe: | Is all that just a fantasy role play or do you really wanna do that |
| [Smith]: | Well I feel like I can't answer that |
| Chloe: | Oh? |
| [Smith]: | I don't know if you're real or like a cop you know? |
| . . . . | |
| [Smith]: | Yeah I want to. |
| . . . . | |
| [Smith]: | They let you bring your iPad to school again? |
| Chloe: | Lol no but I did |
| [Smith]: | Rebel |
| [Smith]: | Lol |
| Chloe: | I am |
| [Smith]: | Oh really?! |

---

[2]    For convenience, we will sometimes refer to the online personas by the names given to them by the agent or "girls."

Chloe:        Yesss
[Smith]:      Prove it!
[Smith]:      Do something rebellious lol
Chloe:        Like?
. . . .
[Smith]:      Something naughtly lol
. . . .
[Smith]:      Maybe a sexy video
[Smith]:      Of you in your bikini
[Smith]:      Not nude
Chloe:        How sexy
[Smith]:      I'll let you determine that
. . . .
[Smith]:      Have you slept with anyone recently
Chloe:        No You?
[Smith]:      Nope
[Smith]:      You're the only one I'm talking to

When Chloe told Smith that she was sending videos to other guys, Smith responded, "You told me you weren't talking to any others. . . . Guess that was a lie?" At another point, Smith told Chloe, "Hey the more I think about this I don't think it's right . . . . I could get in trouble. . . . Please delete my number. I have deleted yours. . . . Please delete my number. Our conversation too. I don't want to get in trouble. I have two boys." Smith later told Chloe that he was "freaked" out because he was called by someone posing as a police officer telling him he would be arrested after a girl who "said she was 16 after saying she was 18" sent him nude pictures. Smith and Chloe resumed texting.

Smith also asked for pictures, videos, and information about the girls' lives so that he could "trust" them. When Chloe told Smith the name of her teacher at her elementary school, Smith later asked why there was no teacher at the school by that name, indicating he looked them up. After Chloe indicated that the teacher was a substitute, Smith told Chloe that "the more your story checks out the more I trust you." In a separate conversation, Smith told Chloe that, since she refused to Facetime, there was only one way to prove she wasn't a cop--by sending "a video saying my name and taking your top off. I'd never ask you to do that though. But that's the only way I'd know you're not posing as a cop you know? Again I'd never ask you to do that."

With Hannah, Smith said, "I think the legal age for consent is 16 in Montana so please tell me you're 16!! LOL." Hannah responded, "Sorry I'm 13," and Smith replied, "You look older."

When Hannah said, "Are you cool with me?," Smith responded "Yeah, why wouldn't I be?" Smith persistently requested pictures and videos from Hannah, asking to give him a tour of her bedroom and telling her a picture of her made him "excited." Smith asked what sexual positions she likes and if she uses condoms. Like his conversations with Chloe, Smith requested a picture of Hannah after engaging in a sexual role-play scenario.

| [Smith]: | Are you wet? In real life |
| Hannah: | Yeah lol |
| . . . . | |
| [Smith]: | Where are you right now? |
| [Smith]: | in your room? |
| Hannah: | The couch |
| [Smith]: | Alone? |
| [Smith]: | What are you wearing? |
| Hannah: | Yeah. Just like shorts and at shirt |
| [Smith]: | Send me a pic |
| Hannah: | Lol do I have to I look gross |
| [Smith]: | You are always beautiful Hannah!!! |
| [Smith]: | Yes you have to lol |

Smith was charged with two counts of enticing children through the use of the internet for his conversations with Chloe and Hannah. I.C. § 18-1509A. The case proceeded to trial and a jury found Smith guilty of both counts of enticing children through the internet. The district court denied Smith's motion for judgment of acquittal. Smith appeals.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 29 provides that when a verdict of guilty is returned, the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the district court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). The evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). Evidence is substantial if a reasonable trier

of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009).

Thus, the only inquiry for this Court is whether there is substantial evidence upon which a reasonable jury could have found that the State met its burden of proving the essential elements of the charged crimes "beyond a reasonable doubt. *Id.* In other words, this Court reviews a trial court's ruling on a motion for acquittal for substantial evidence. *State v. Goggin*, 157 Idaho 1, 4, 333 P.3d 112, 115 (2014). In conducting its analysis, this Court is required to consider the evidence in the light most favorable to the State but will not substitute its judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence. *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2010). This Court exercises free review over questions of law. *Goggin*, 157 Idaho at 4, 333 P.3d at 115.

**III.**

**ANALYSIS**

Smith presents two reasons why the evidence is insufficient to prove the essential elements of the crime of enticing children through the use of the internet. First, Smith argues that the conversations between him and the personas did not rise to the level of illegal enticement. Second, Smith argues that the evidence is insufficient to establish beyond a reasonable doubt that Smith believed the girls were under the age of sixteen.

**A.      Enticement**

Smith argues that there was insufficient evidence to find him guilty of the charged offenses because the interactions between him and the online personas do not fit within the actions prohibited by the statute. As relevant here, I.C. § 18-1509A reads as follows:

> (1)      A person aged eighteen (18) years or older shall be guilty of a felony if such person knowingly uses the internet or any device that provides transmission of messages, signals, facsimiles, video images or other communication to solicit, seduce, lure, persuade or entice by words or actions, or both, a person under the age of sixteen (16) years or a person the defendant believes to be under the age of sixteen (16) years to engage in any sexual act with or against the person where such act would be a violation of chapter 15, 61 or 66, title 18, Idaho Code.
> . . . .
> (3)      It shall not constitute a defense against any charge or violation of this section that a law enforcement officer, peace officer, or other person working at the direction of law enforcement was involved in the detection or investigation of a violation of this section.

5

(4)	In a prosecution under this section, it is not necessary for the prosecution to show that an act described in chapter 15, 61 or 66, title 18, Idaho Code, actually occurred.

The conduct prohibited by I.C. §§ 18-1506, 18-1507, and 18-1508 includes sexual contact between the minor and defendant, the minor having sexual self-contact, and pictures or videos depicting the minor's genitals or breasts--all for the purposes of sexual gratification or stimulation of at least one person involved. Smith argues that sexually explicit conversations over the internet with a minor, without more, is not in violation of the statute. He explains that, because the conversations were over the internet, no actual sexual acts or sexual touching between him and the girls occurred. Smith argues that he did not violate the statute because: (1) no physical contact could have occurred over the internet; (2) he did not actually solicit or request sexual contact between himself and the girls or that the girls have sexual self-contact; and (3) he did not request that the girls provide photographs of their vaginas or breasts.

The statute unambiguously prohibits use of the internet to solicit, seduce, lure, persuade or entice by *words or actions*, *or both*, a child to have sexual contact with the defendant or a child to have sexual self-contact. In hundreds of internet messages sent over a period of months, Smith repeatedly and graphically expressed his desire to have a sexual relationship with Chole and Hannah. He asked them if they were interested in older men, about their sexual histories, and what they liked sexually. He constantly complimented the girls on their appearances, calling them stunning, beautiful, and babes. He pressured them to send him pictures and videos of themselves, including "full body" pictures, pictures in their bikinis, and "sexy videos." He told them that their pictures and videos made him sexually aroused. He frequently discussed the possibility of travelling to meet them when they were home alone. He asked both girls for their home addresses. Smith also initiated "role plays" with each girl in which he described in explicit detail how he would have sex with her in various locations. He told each girl he wanted to do the things he described, said he was sexually aroused by the "role plays," and asked each girl if she was also sexually aroused by his graphic sexual descriptions. While Smith did not expressly solicit or request each girl to engage in prohibited sexual behavior, there is ample evidence from which the jury could have concluded that he seduced, lured, persuaded, or enticed such behavior by his words or actions. That the prohibited acts were not (and could not have been) consummated is irrelevant.

6

In addition to soliciting (asking for something), the statute prohibits luring, seducing, or enticing. No overt request is required and no prohibited conduct need actually occur. *See* I.C. § 18-1509A(4); *State v. Reed*, 154 Idaho 120, 123-24, 294 P.3d 1132, 1135-36 (Ct. App. 2012). Furthermore, as was the case in *State v. Glass*, 146 Idaho 77, 85, 190 P.3d 896, 904 (Ct. App. 2008), Smith's conversations were "but a stem" in the process of luring or seducing Chloe and Hannah to direct sexual contact. Smith argues that explicit sexual conversation with a child, without more, is lawful. We need not decide this question. Here, the conversations were numerous and went on for months. This amounts to substantial evidence of luring, seducing, and enticing.

Further, Smith's conduct ventured beyond text exchanges into luring, seducing, and enticing physical acts. Smith argued that he was "baited" into saying that he wanted to engage in the role-play activity in person but took no further steps towards prohibited conduct beyond the text conversations. Contrary to this assertion, Smith asked repeatedly for pictures and videos of both Chloe and Hannah. He told them both that he was making plans to travel to meet them when their parents were busy. Smith asked both girls if they were "wet" after engaging in sexual role-play. Smith told one of them that they would meet to have ice cream and go for a walk because he could not say he wanted to have sex.

Smith also requested photographs from both girls. Smith asserts that his request for photographs was not a request for nude photographs, specifically stating that his request for pictures was not a request for pictures of the girls' genitals or any other sort of erotic nudity from either girl. However, the definition of sexually exploitive material is not so narrow. Chapter 18 of the Idaho Code provides definitions of types of offenses, including I.C. § 18-1507, which states in pertinent part:

> (2)     A person commits sexual exploitation of a child if he knowingly and willfully:
>
> . . . .
>
> (b)     Causes, induces or permits a child to engage in, or be used for, any explicit sexual conduct for the purposes of producing or making sexually exploitive material.

"Explicit sexual conduct" as defined in I.C. § 18-1507(1)(e) includes sexual intercourse, erotic fondling, erotic nudity, masturbation, sexual excitement, or sexual excitement. "Sexually exploitive material" as defined in I.C. § 18-1507(1)(j) includes any image or photograph which shows a child engaged in, participating in, or being used for explicit sexual conduct. Moreover, it

is abundantly clear that Smith requested nude pictures on multiple occasions under the pretense of asking but then saying he was not really asking. The jury could find from this evidence that both the express implication and the reasonable inference was that Smith was in fact requesting nude photos from the girls.

During his communications with Chloe, Smith initiated detailed sexual role-play. At one point in the role-play, Smith asks "are you wet down[ ]there?" When Chloe responded in the affirmative, Smith said, "prove it," and "pic." Smith argues that, because he continued on to the sexual role-play before he received a picture and said, "whatever you want to send" and "I'm more of a boob guy," he was not asking for a sexual picture of Chloe but was asking her to send any picture that she wanted to send. However, a reasonable trier of fact could find that, after a conversation of a sexual nature and Smith telling Chloe to prove that she was sexually aroused with a picture, he was asking for a picture of Chloe's genitals or possibly her breasts since he was a "boob guy."

During the sexually explicit role-play conversation with Hannah, Smith told her that he wished he was her teacher because he would keep Hannah in detention, make her take her top off to get out of detention, and have sex with her. During this conversation, Smith made clear he was sexually aroused during the texts. When Hannah told Smith that she was also aroused and alone wearing just shorts and a shirt, Smith told her to send a picture and that, when asked if she has to, Smith responded by saying "yes you have to." Again, a trier of fact could reasonably find that requesting a picture of a thirteen-year-old who said she was alone and aroused after describing a detailed sexual scenario could be interpreted as Smith requesting sexually explicit material in violation of the statute. In line with the statutory definition of explicit sexual conduct, Smith's request for photographic proof of Chloe and Hannah's assertion that they were aroused could reasonably be interpreted as Smith asking Chloe and Hannah for proof of sexual excitement from their conversations or erotic nudity.

Therefore, a reasonable trier of fact, based on the evidence and inferences therefrom, could find that Smith knowingly or willfully solicited, seduced, lured, persuaded, or enticed Chloe and Hannah to engage in sexual acts. Additionally, the evidence and reasonable inferences therefrom is sufficient to support a reasonable trier of fact finding that Smith solicited, seduced, lured,

8

persuaded, or enticed Chloe and Hannah to be engaged in or be used for sexually explicit conduct for the purpose of producing or making sexually exploitive material.

**B.     Belief of Age**

Smith claims that the evidence is insufficient to establish beyond a reasonable doubt that Smith believed the girls were under the age of sixteen. Smith asserts that he believed the online personas were not minors. He argues that his persistent requests for pictures and videos could not be easily fulfilled and that his calling out the personas as fake was not for the purpose of ensuring the personas were thirteen-year-old girls but ensuring that they were not. Smith argues that, because there were many similarities among the girls' stories and he asked the girls repeatedly if they were police, it shows that he "thought he was engaging in roleplaying with a consenting adult." In other words, Smith argues that, because he asked the girls if they were police (and received no affirmative answer), the evidence shows that he thought he was speaking with a consenting adult. Smith makes this argument despite continuing to engage in sexually explicit chats with the girls, asking them to delete their messages, stating he could go to jail by saying they were going to meet and have sexual relations, and asking them for proof that the girls were not police by sending him pictures and videos (one specifically asking one of the personas to lift her shirt up). This argument is not persuasive.

In *Reed*, the defendant was charged with and found guilty of enticing a child over the internet after exchanging hundreds of online chats over several months with a person he believed to be fifteen years old. Reed argued there was insufficient evidence that he believed the persona was a minor and specifically pointed to the messages where he questioned whether the persona was actually law enforcement. This Court held that an adult expressing reservation about a persona's identity on a handful of occasions was relevant but did not render the remaining evidence insufficient to support the jury's findings. *See Reed*, 154 Idaho at 124, 294 P.3d at 1136.

Like *Reed*, Smith cites some communications where he questioned whether Chloe and Hannah were law enforcement and asked them to prove that they were not by sending pictures and videos or videoconferencing via Facetime. However, Smith continued communicating with both Chloe and Hannah for several months (over hundreds of messages) even after both girls failed or refused to send the pictures of themselves which he stated would prove that they were who they

9

said they were. Moreover, the communications continued (after Smith noted his concern of the girls' identities with no confirmation) to remain sexual in nature.

The evidence that is most contrary to Smith's assertion Chloe and Hannah's failure to send the pictures and videos he requested "confirmed they were not minors" was the conversation where Smith told Chloe that they should stop communicating, she should delete their conversations and his number, and that he deleted her number because it was "wrong" and he could get "in trouble" for their conversations. Once the conversation resumed, Smith admitted he got "freaked" out when the police called regarding another underage girl sending him "nudes" but told the girls that the call was a scam. The evidence and reasonable inferences therefrom amply support a finding by the jury that, because Smith was eager to terminate conversations with Chloe after receiving a call from the police was because he believed his conversation with Hannah was also an illegal communication with a thirteen-year-old, not an adult. Therefore, because it is reasonable for a fact finder to conclude that Smith believed Chloe and Hannah were underage girls, he failed to show that a reasonable trier of fact could not have found him guilty.

## IV.

## CONCLUSION

The evidence and reasonable inferences therefrom were sufficient for the jury to have found that the prosecution sustained its burden of proving the essential elements of the charged crimes beyond a reasonable doubt. Because Smith failed to meet his burden, his judgment of conviction for two counts of enticement of a child through the internet is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.

10